33  45
97 366

</div>

## JOHN H. M. TOWNSEND, by Samuel J. Hensley, his Guardian *ad litem v.* DRURY J. TALLANT *et als.*

Publication of Notice of Order to sell Land to pay Debts.—Under the Probate Act of 1851, notice of an order of the Probate Court requiring all persons interested to show cause why the real estate of the intestate should not be sold to pay debts, was required to be published for four successive weeks before the day to show cause, in a paper designated by the Court. If such notice was published three weeks in the paper designated by the Court, and then the fourth week in another paper designated by the administrator, the Court did not acquire jurisdiction by the publication.

Order to show cause why Land should not be Sold to pay Debts.—If the interval between the date of an order of the Probate Court to show cause why land left by the intestate should not be sold to pay debts, and the day fixed for the hearing of the petition, is less than the time required for the publication of the notice, or is less than the time allowed by law from the date of the order for parties interested to appear and show cause, the order is void, and a sale made under proceedings based on the order is also void.

Administrator and Guardian. — If the administrator is also guardian of an infant heir, the two positions, so far as general uses are concerned, are not necessarily incompatible.

Idem.—If, however, under the Probate Act of 1851, the administrator was also guardian of an infant heir, and as administrator attempted to divest the title of the heir by a sale, under an order of the Probate Court, of land to pay debts of the intestate, his position was hostile to the heir, and in such proceeding he could not represent the heir, but a guardian *ad litem* should have been appointed to watch the interests of the heir.

Attorneys for Minor Heirs.—The Probate Court, under the Act of 1851, had no authority to appoint attorneys for absent or minor heirs. Under said Act, when the administrator applied for leave to sell land to pay debts, and there were minor heirs with no general guardian, a guardian *ad litem*—not an attorney—was required to be appointed, for the sole purpose of representing the minor heirs, before the petition was acted on.

No Presumptions indulged against Probate Record.—If the probate record is

full, and shows that an attorney—not a guardian *ad litem*—was appointed to represent minor heirs on proceedings set on foot by the administrator to sell land to pay debts, it will not be presumed that a guardian *ad litem* was appointed.

WHEN HEIR MAY ATTACK PROBATE SALE OF LAND.—If, in proceedings set on foot by the administrator in the Probate Court to sell land to pay debts, the Court acquires no jurisdiction of minor heirs, the order of sale is void, and the sale may be attacked collaterally by the heir.

IDEM.—An order of the Probate Court confirming such sale is void. There was no order of sale for the confirmation to act on.

ESTOPPEL AS TO MINOR HEIR.—If an administrator, after procuring from the Probate Court an order to sell real estate to pay debts, afterwards makes a settlement of his account in the Court with the estate, a minor heir is not estopped by such settlement from afterwards contesting the validity of the sale.

ACT OF 1866 RATIFYING PROBATE SALES.—The Supreme Court will not give an appellant the beneficial operation of the Act of 1866, ratifying and confirming certain probate sales of real estate, in cases where the judgment in the Court below was rendered before the passage of the Act. In such cases said Act must be made the basis of an original proceeding in equity, if the party would claim the benefit of its provisions.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*John W. Dwinelle,* for Appellants.

Schallenberger was the general guardian of the infant as well as administrator of the estate. He was thus a competent guardian to represent the infant under section one hundred and fifty-nine of the Probate Act, which required a copy of the order to show cause to be served on the general guardian if the infant had one. But being the petitioner for the sale, and the guardian also, he had full notice already.

Special attorneys were also appointed to represent the minor heir. This would have been a sufficient appointment, even if the infant had not already a general guardian. (*Gronfier* v. *Puymirol,* 19 Cal. 629.) The fact that the attorneys were appointed in August does not vitiate the appointment, for they were appointed to represent "minor heirs" "in this estate;" that is to say, in *all* proceedings. (*Stuart* v. *Allen,* 16 Cal. 473.)

The publication of the order to show cause was not neces-

sary. Only one of three things was necessary: either—1. Service of a copy of the order (Probate Act, Secs. 158, 159;) or—2. Publication for four weeks (Probate Act, Sec. 157;) or—3. The written assent of the persons interested (Probate Act, Sec. 157;) and if this assent is given, this same section one hundred and fifty-seven expressly provides, " *the notice may be dispensed with.*"

Now, Schallenberger,. the guardian, certainly represented his ward, and consequently was " served with the copy of the order." Moreover, he petitioned, in writing, for the order of sale; and he reported, also in writing, that he had sold. This certainly constitutes an " assent in writing." .Besides, the attorneys for the " minor heirs" assented in writing to the proposed sale. This assent was sufficient. (*Townsend* v. *Gordon*, 19 Cal. 205.)

There is nothing in the Probate Act which makes the validity or confirmation of the sale depend upon the notice of the sale being *in fact* published as prescribed in section one hundred and sixty-six of the Probate Act. It is merely provided by section one hundred and seventy-three of the Probate Act that " before any order is entered confirming the sale, it shall be proved to the satisfaction of the Court that notice was given of the sale as herein prescribed, and the order of confirmation shall state that such proof was made." As to the distinction between the existence of the fact, namely, actual publication, and satisfactory proof of publication, see *Schneider* v. *McFarland*, 2 N. Y. (Comst.) 459; *Sibley* v. *Waffle*, 16 N. Y. (2 Smith,) 186.

The matters contained in the order confirming the sale are all *res judicatœ*, and the plaintiff cannot be heard here to attack them collaterally. (*Runyon* v. *Newark*, 4 Zabriskie, 467; *Hunt* v. *Frost*, 4 Cushing, 64; *Lick* v. *Stockdale*, 18 Cal. 220.)

The previous· notice of the sale was not a jurisdictional fact. If the notice had been omitted entirely, the sale would have been valid. The above cited provision of section one hundred and seventy-three of the Probate Act of 1851 is no more mandatory than that in the Practice Act: " Section 221.

Before the sale of property on execution, notice thereof shall be given as follows," etc., and yet, a sale without notice under this section is held to be valid. (*Smith* v. *Randall*, 6 Cal. 47; *Harvey* v. *Fiske*, 9 Cal. 93, 94.)

If this infant plaintiff had come of age, and afterwards had received the money, he would have been estopped from attacking the probate sale. (*White* v. *Swain*, 2 Pick. 365; *Jameson* v. *Hapgood*, 10 Pick. 77; *Hicks* v. *Cram*, 17 Vert. 449; *Martin* v. *Sherman*, 2 Sand. Ch. 341.) The infant, having received the money on a judicial accounting with the administrator, is estopped from maintaining this action. (1 Black. Com. 130; 4 Kent, 249; *Joyce* v. *Joyce*, 5 Cal. 164.)

*E. Casserly*, and *Doyle & Barber*, for Respondent.

The Probate Courts of this State are Courts of inferior, limited and statutory jurisdiction. (*Smith* v. *Andrews*, 6 Cal. 652, 654; *Beckett* v. *Selover*, 7 Cal. 215, 240; *Gregory* v. *McPherson*, 13 Cal. 562; *Stuart* v. *Allen*, 16 Cal. 473; *Townsend* v. *Gordon*, 19 Cal. 188.) A party relying on a right derived under the proceedings of such a Court is bound to show that it had jurisdiction to act. The jurisdiction will not be presumed. This is the universal rule, whether the question arises upon the pleadings or the proofs. (*Schneider* v. *McFarland*, 2 Coms. 459, 461, 464; *Corwin* v. *Merritt*, 3 Barb. S. C. R., 341, 343, 346; *Bloom* v. *Burdick*, 1 Hill, 139, 134, 143; *People* v. *Barnes*, 12 Wend. 494; *People* v. *Corlies*, 1 Sandf. S. C. R., 247.)

In proceedings in Probate Court to sell real estate, the order to show cause is the process, and must be served either by a personal service or publication of four weeks. If published, it must be in a paper specified by the Court. (Probate Act 1851, Sec. 157.) The day for showing cause was two less than four weeks from the date of the order to publish notice, so that a notice of four weeks could not have been published. (*Toof* v. *Bentley*, 5 Wend. 276; *Farr* v. *Smith*, 9 Wend. 339.) The notice not having been published in the paper named by the Court, the publication was void as a con-

structive service. (*Reynolds* v. *Wilson*, 15 Ill. 394–6; *Well-man* v. *Lawrence*, 15 Mass. 327; *Underwood* v. *Irving*, 3 Cow. 59; *Corwin* v. *Merritt*, 3 Barb. 341, 345; *Hunt* v. *Wickliffe*, 2 Peters, 215; *Anon.*, 1 Wend. 90; *Jordon* v. *Giblin*, 12 Cal. 100–2.)

There is yet another fatal objection to these probate proceedings. The sole heir to the property was a minor, and even if the process had been well served on him, no further steps could be taken in the case till a guardian *ad litem* had been appointed for him and his appearance by guardian effected. (Probate Act of 1851, Sec. 159.) The Court must have jurisdiction of the infant's person before it can appoint a guardian. (*Grant* v. *Van Schoonhoven*, 5 Paige, 256; *Hodges* v. *Wise*, 16 Ala. 509, 514; *Stanton* v. *Pollard*, 24 Miss. 155–6, and authorities cited; *Collard* v. *Groom*, 2 J. J. Marsh. 487; *Graham* v. *Sublett*, 6 Ib. 45; *Jones' Executors* v. *Mc-Ginty*, 3 Dana, 426.) The order of August 25th, 1851, appointing attorneys for absent and minor heirs, is no compliance with the requirements of section one hundred and fifty-nine. That section required the appointment of a " guardian *ad litem* for the *sole* purpose of appearing for the infants, and taking care of their interest in the proceedings."

So far as any supposed estoppel *in pais* could result from the retention of the purchase money, operating as a ratification of the transaction, such an estoppel implies a legal capacity of election which infants do not possess, and cannot therefore be urged in this case.

In reply to the point raised by the appellant, as to the effect of the law of April 2d, 1866, on sales made under the supposed authority of the Probate Court, we remark:

*First*—That the jurisdiction of the Supreme Court over this case is wholly and strictly of an appellate character. Its duty is limited to the inquiry whether the Court below committed any error for which judgment should be modified or reversed, or a new trial awarded.

*Second*—The only case where an appellate Court is permitted to take notice of a change in the law, subsequent to

the entry of the original judgment, is where the law has been
so changed that the original judgment, if affirmed, could no
longer be legally enforced.  (*Hartung* v. *People*, 22 N. Y. 95;
*Sanches* v. *People*, 22 N. Y. 155.)


By the Court, SHAFTER, J.:

Ejectment to recover a portion of Fifty Vara Lot Number
Seven Hundred and Nine, in the City of San Francisco.  The
trial was by the Court, without a jury.  The plaintiff had
judgment.  The defendants moved for a new trial, which
being denied, they appealed.

The plaintiff is an infant and sued by his guardian *ad litem*.
At the trial, he proved that his father, John Townsend, died
intestate on the 8th of December, 1850; that at the time of
his death he was seized of the demanded premises; that the
plaintiff was the only heir at law of John Townsend, and that
the defendants were in possession at the time the action was
commenced.

The defendants claimed to have acquired the title of John
Townsend by virtue of a sale made by his administrator,
Moses Schallenberger, (who was also at the time the general
guardian of the plaintiff,) in the due course of administration,
and mesne conveyances from the purchaser at the sale.  To
prove their title they introduced the record of the proceedings
of the Probate Court of Santa Clara County, in which the
estate of John Townsend was administered upon and finally
settled.  To these proceedings various objections were inter-
posed on the part of the plaintiff.  The Court below held in
effect that these objections were well taken and that the title
of John Townsend did not pass by virtue of the administra-
tor's sale.

The whole case turns upon the validity of the proceedings
of the Probate Court under the Act relating to the estates of
deceased persons, passed May 1st, 1851, (Acts 1851, p. 448.)

It appears that Schallenberger, acting as administrator,
presented a petition to the Probate Court on the 26th of

November, 1851, praying that an order might be granted directing all persons interested in Townsend's estate to appear before the Probate Judge at the next term of the Court, to be held on the fourth Monday of December then next ensuing, to show cause why an order should not be granted to sell real estate for the payment of debts. The Court on the same day made an order directing that public notice should be given in the *San José Weekly Visitor*, in pursuance of law, to all persons interested in said estate to appear at the Court house in the City of San José on the fourth Monday of December, 1851, and show cause why the prayer of the petitioner should not be granted. Under the Probate Act of 1851, section one hundred and fifty-seven, it was necessary to publish this order in the paper named for four successive weeks at least. It appears, however, that the notice was published in that paper for three weeks only—the fourth publication was in the *California Courier*, published in the City of San Francisco. The order was not complied with for the reason that the *Visitor* was discontinued at the third publication. The discontinuance of the paper, however, did not annul the order, nor turn the question of publication, or of further publication, over to the discretion of the administrator. The one hundred and fifty-seventh section of the Act of 1851 contemplates a publication of four weeks in a newspaper designated by the Court, and such publication could not be dispensed with except in the event of personal service, or of written assent to the sale by all persons interested in the estate.

Again. The interval between the date of the order and the day fixed for the hearing of the petition was only twenty-six days, and it was therefore impossible that the order could be published for " at least four successive weeks " before the hearing, as required by the one hundred and fifty-seventh section of the Act; and the order was void from the beginning for that reason.

As already suggested, Schallenberger was appointed guardian of the plaintiff—then two or three years old—at the same time he was appointed administrator, viz: January

11th, 1851. On this state of facts it is claimed for the appellants that Schallenberger was notified as guardian of what he was attempting to do as administrator, and that therefore the ward must be considered to have been made a party to the proceeding.

Schallenberger united in himself the capacities of administrator and guardian, and the two, so far as general uses were concerned, were not necessarily incompatible. But in a special proceeding set on foot by Schallenberger as administrator, against his ward, and for the distinctive purpose of divesting the ward of his title as heir, Schallenberger could not represent the ward. It was considered in *Schneider* v. *McFarland*, 2 Comst., N. Y., 459, that " proceedings for the sale of real estate are hostile to the heirs, and that the Surrogate must have jurisdiction of the person as well as of the subject matter, in the manner provided by statute, or the sale will be void." It was the duty of Schallenberger, as the representative of Townsend's estate, to procure the order of sale for which he had applied, if the interests of the estate required it, without reference to the interests of the heir, as such. Schallenberger could not represent both sides of the record at the same time. The minor heir, then, having no guardian *quoad* the petition, it became the duty of the Court, before proceeding to act, " to appoint some disinterested person his guardian, for the sole purpose of appearing for him and taking care of his interests." (Probate Act, Sec. 159.) No such guardian *ad litem* was appointed. It appears, to be sure, that on the 25th day of August, 1851, three months before the petition for leave to sell real estate was filed, three members of a certain law firm were appointed " attorneys for absent and minor heirs." The Probate Court had no authority to make this appointment. Under the Act of 1851 a guardian was to be appointed for minor heirs, on issues affecting their interests as such issues should arise; and the one hundred and fifty-seventh section requires that when there is a petition for leave to sell real estate, and there are minor heirs with no general guardian, that a guardian— not an attorney—shall be appointed to represent them before

the petition shall have been acted on ; and that the guardian shall be appointed for the sole purpose of taking care of the interests of the minors in that particular proceeding. The object of these provisions was to secure attention and fidelity on the part of the guardian by limiting his authority to a single issue.

It is further urged for the appellant, that it will be presumed that a guardian was regularly appointed to represent the plaintiff, on the ground of the defectiveness of the probate record; that such regular appointment is assumed in the record; and on the strength of the fact that certain persons appear as acting for the infant and absent heirs. Reliance is placed here upon the decision *In the Matter of the Will of Warfield*, 22 Cal. 61. But that case and the case at bar are unlike in their circumstances. There was here no dispersion of records and files, the existence of which was proved; nor were there any abbreviated entries bearing upon the proceedings had on the administrator's petition, hinting at transactions not recorded with all their circumstances, or not recorded at all. On the contrary, the record—proceeding in chronological order and hinting at nothing, purports to contain a full and detailed statement of everything that transpired in the course of the proceedings on the petition for leave. The record was produced at the trial, and showing, as it did, what was done in the matter of appointing an attorney to take care of the plaintiff's interests, there is no room left for presuming that anything more was done than what the record recites; nor anything less, nor anything different. So to presume would be to presume against the record, and not to supply defective statements therein, by reasoning from *indicia*, which the record itself supplies. It is true that in the order of the Court made on the 23d of December, 1851, giving the leave asked for in the administrator's petition, a document is referred to as on file, called " A statement of the attorney for the infant and absent heirs of said estate heretofore appointed by this Court;" but we cannot accede to the appellant's claim that this reference must be regarded as establishing that even an attorney, and

much less a guardian, was appointed under the one hundred and fifty-seventh section of the Probate Act, to represent the plaintiff; for the statement referred to is produced in the record, and it appears on its face that the " attorney " was a member of the law partnership appointed three months in advance of the filing of the petition, to the impossible position of attorney at large of absent and minor heirs.

Again, the defendants insist that the sale having been confirmed by the Probate Court, cannot be collaterally attacked in this action, but that, as against the plaintiff, the confirmation is conclusive that the Court had jurisdiction of both subject matter and parties. But if the order of sale was *coram non judice,* then the " sale " was no sale, and it could not be made valid and binding by any number of so-called confirmations. The sale being void, there was no subject matter upon which the order of confirmation could act. If the Court had no jurisdiction to order the sale it had none to confirm it. Where there is no power to render a judgment or to make an order, there can be none to confirm or execute it; or none, at least, without the help of legislation. (*Gregory* v. *Taber,* 19 Cal. 410 ; *Haynes* v. *Meek,* 20 Cal. 317.) But the order of confirmation here is especially infelicitous in containing a recital to the effect that the original order to show cause why a sale of real estate should not be adjudged, " having been duly advertised *three weeks,* according to law, the administrator proceeded to sell," etc. By section one hundred and seventy-three of the Probate Act, as already shown, it is provided that " before any order is entered confirming the sale, it shall be proved to the satisfaction of the Court that notice was given of the sale as herein described, and the order of confirmation shall state that such proof was made." The order made here contains no such general statement, and the one which it does contain shows affirmatively that the statute rule was violated.

It is further claimed for the appellants that the " respondent, although an infant, having received the purchase money paid at the probate sale of the land in question, upon a judicial accounting with the administrator, is estopped from

maintaining this action." The objection proceeds upon a clear mistake of fact. The parties to the judicial accounting referred to were Schallenberger and the estate he represented; and the only questions involved therein were as to receipts and disbursements by the former as administrator. Schallenberger charged himself with the money received on the sale of real estate, and the balance found was for instead of against him. The plaintiff received no money from Schallenberger on that occasion nor any other.

As we find no error in the record, we cannot reverse the judgment and order a new trial on the ground that the defendant is or may be within the beneficial operation of the Act of 1866, whereby probate sales of a certain class are ratified and confirmed. That Act was passed since the judgment in this case was rendered, and it must now be made the basis of an original proceeding in equity, if the defendants would claim the benefit of its provisions. (18 Cal. 275; Graham on N. T., Tit. "Equity.")

Judgment affirmed.