of origin or at point of destination; but if the defendant was going to insist upon a strict compliance with the terms of the stipulation its attorney should not have accepted the notice of claim presented to him at Lockport, and if the same had not been accepted then a strict compliance with the stipulation could have been made. Indeed, the plaintiffs were lulled into security by the failure of the defendant to object to the manner and place of the making of the written claim, and in my opinion there was a sufficient compliance with the stipulation in question and a waiver by the defendant of a more strict compliance therewith. 6 Cyc. 509; Falkenberg v. Erie R. Co., 28 Misc. Rep. 165, 59 N. Y. Supp. 44; Marrus v. N. H. S. Co., 30 Misc. Rep. 421, 62 N. Y. Supp. 474; Atchison, T. & S. F. R. Co. v. Temple, 47 Kan. 7, 27 Pac. 98, 13 L. R. A. 362; Hinkle v. Southern R. Co., 126 N. C. 932, 36 S. E. 348, 78 Am. St. Rep. 685; Eckert v. Penna. R. R. Co., 211 Pa. 276, 60 Atl. 781, 107 Am. St. Rep. 571.

Motion for new trial denied, with $10 costs.

Motion denied, with $10 costs.

---

(89 Misc. Rep. 312)

### In re LANSING'S ESTATE.

(Surrogate's Court, Herkimer County. February, 1915.)

1. PAUPERS &47—CHARITABLE INSTITUTIONS—SUPPORT AND EDUCATION OF INMATE—PAYMENT FROM ESTATE.

During decedent's lifetime his child, about six years of age, was placed, pursuant to Education Law (Laws 1909, c. 21) § 928, in the New York Institution for the Instruction of the Deaf and Dumb, to be supported at county expense until he became 12 years old. Later he was transferred to the Central New York Institution for Deaf Mutes, under such section as amended in 1910 (Consol. Laws, c. 16, § 978). On a hearing of a claim of the county against decedent's estate for moneys expended in maintaining and educating such child up to the time of decedent's death, it appeared that to the bill of each of such institutions against the county there was attached a certificate of the state board of charities "that the institution has complied with the rules of the board for the reception and retention of inmates." *Held*, that each certificate meant that each of the institutions had complied with all the rules which the board intended to be enforced during the time named in each certificate, and was a waiver of enforcement of the rule of the state board of charities which provided that "no child under the age of sixteen years * * * shall be retained in any such institution as a public charge unless accepted in writing as such by the officer charged with the support and relief of the poor of the county * * * upon which such child * * * is sought to be made a public charge," and that the county became liable for payment of the bills, though there was no written acceptance by the superintendent of the poor of the county of the retention of the child in either institution.

[Ed. Note.—For other cases, see Paupers, Cent. Dig. §§ 200–205; Dec. Dig. &47.]

2. PAUPERS &47—CHARITABLE INSTITUTIONS—SUPPORT AND EDUCATION OF INMATE—PAYMENT FROM ESTATE.

Though Const. art. 8, § 14, authorizes the Legislature to provide for the education and support of the deaf and dumb, it forbids payment

---

&For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

therefor for any inmate of a charitable institution, wholly or partly under private control, who has not been received and retained therein pursuant to the rules established by the state board of charities.

[Ed. Note.—For other cases, see Paupers, Cent. Dig. §§ 200–205; Dec. Dig. ☞47.]

In the matter of the estate of Edward Ten Eyck Lansing, deceased. Claim presented by the County of Herkimer to Marianna Yates Lansing, executrix, for moneys expended for the maintenance and education of decedent's son at New York institutions for the instruction of the deaf and dumb. Claim disallowed.

E. C. Rice, of Herkimer, for claimant.
Robert F. Livingston, of Little Falls, for executrix.
Wm. F. Lansing, of Little Falls, special guardian.

BELL, S. [1] The county of Herkimer presented a claim to Marianna Yates Lansing as executrix of the will of said deceased of $1,-070.15, moneys expended for the maintenance and education of Yates Lansing at the New York Institution for the Instruction of the Deaf and Dumb, located in the city of New York, and at the Central New York Institution for Deaf Mutes, at Rome, N. Y. This claim was disputed by the executrix, and consents by claimant and executrix filed that the claim be heard and determined by the surrogate upon the judicial settlement of the account of the executrix.

Edward Ten Eyck Lansing and Marianna Yates Lansing, his wife, had six children, born as follows: Katherine, in March, 1901; Yates, July 8, 1902; Mary, in February, 1904; Content, in November, 1905; Elizabeth, in April, 1908; and Fox, in October, 1909.

In May and June, 1908, Yates had a severe attack of scarlet fever, which was followed by deafness, mastoid abscesses, and mastoiditis. This condition continued until December, when the father and mother and the then five children went to New York City to have Yates operated upon. They lived in a flat until April, 1909. Yates was put in a hospital, where he underwent two serious operations. After leaving the hospital he went with his parents, going back and forth to the hospital for treatment. He was weak and depressed, and became totally deaf and dumb. Katherine had a long and expensive treatment for her eyes. In February, Content had scarlet fever, and the family were quarantined. The mother did all of the housework and took care of the children, the father assisting in the care of Content. The doctor's bills were large and could not then be fully paid. The family, except Yates, returned in April, 1909, to their farm in the town of Manheim, this county, where Mrs. Lansing did the household work and cared for the children, except when she was ill. They were not able to pay for assistance in the housework. The parents had no experience in bringing up or instructing deaf mutes.

On March 20, 1909, on the application of an uncle, E. V. Decker,

supervisor of the Second and Third wards of the city of Little Falls, this county, made a certificate as follows:

"State of New York, County of Herkimer—ss.:

"I have this day selected Yates Lansing, of the town of Manheim, county of Herkimer, son of Edward T. E. Lansing, who was born on the 8th day of July, 1902, as a county pupil in the New York Institution for the Instruction of the Deaf and Dumb from the 31st day of March, 1909, to the 7th day of July, 1914 (he being then 12 years of age), to be educated and supported therein, during that period, at the expense of the county of Herkimer, in conformity with the provisions of section 2, chapter 325, Laws of 1863, as amended by chapter 213, of the Laws of 1875, and chapter 36, Laws of 1892.

"[Signed]   E. V. Decker,

"Supervisor of the Town of Little Falls, of Second and Third Wards, County of Herkimer."

"Dated March 20, 1909."

And by virtue thereof Yates was on March 31, 1909, placed in the New York Institution for the Instruction of the Deaf and Dumb, where he remained until in September, 1910. On August 29, 1910, William Jennings, supervisor of the town of Manheim, this county, made certificate similar to the one made by Supervisor Decker, except that the institution named was the Central New York Institution for Deaf Mutes, at Rome, to which institution Yates was transferred in September, 1910. Yates was placed in the New York Institution under section 928 of the Education Law and in the Rome Institution under section 978, being section 928 as amended in 1910. From the time of going to New York City until the father's death, their income was not sufficient to maintain the family, and they were running behind. Mr. Lansing died October 28, 1910, leaving an estate of $6,820.02. The county has paid from March 31, 1909, to October 28, 1910, both inclusive, $485.36, and if any sum is allowed against this estate it can be for that amount only.

The provisions for the care and instruction of deaf mutes were made a part of the Education Law in 1909 (in effect February 17th). Section 920 (made 970 in 1910) provides, that:

"All the institutions for the instruction of the deaf and dumb, and blind, and all other similar institutions, incorporated under the laws of the state, or that may be hereafter incorporated, shall be subject to the visitation of the commissioner of education, and it shall be his duty: To inquire, from time to time, into the expenditures of each institution, and the systems of instruction pursued therein, respectively."

Section 927 provides for the maintenance and instruction of a deaf mute child under 12 years of age, who has become, or shall be liable to become, a charge for its maintenance on any of the towns or counties of this state, and makes it the duty of the overseers of the poor of such towns or the supervisors of such counties, without application, to place such child in one of the institutions named in section 928, viz.: (1) The New York Institution for the Deaf and Dumb; or (2) the Institution for the Improved Instruction of Deaf Mutes; or (3) the Le Couteulx St. Mary's Institution for the Improved Instruction of Deaf Mutes in the city of Buffalo; or (4) the Central New York Institution for Deaf Mutes in the city of Rome; or (5) the Albany

Home School for the Oral Instruction of the Deaf at Albany; or (6) to any other institution in the state for the education of deaf mutes, as to which the state board of charities shall have filed with the commissioner of education a certificate to the effect that said institution has been duly organized and is prepared for the reception and instruction of such pupils.

Section 927 applies only to a child who has, or shall be liable to, become a public charge—it does not say between 5 and 12 years, but under 12, for such a child might become a public charge at 1 or 4, and may be without parent, guardian, or friend, so that the responsibility for its maintenance and instruction must be put upon some one, and the Legislature put it upon the overseers of the poor or supervisors, thus insuring proper maintenance and instruction for such a poor and unfortunate child. This section was amended in 1910 (in effect April 22d) by changing the number of the section to 977, and "supervisors of such county" to "board of supervisors of such county."

Section 928 provided that any parent, guardian, or friend of a deaf mute child, within this state, over the age of 5 years and under the age of 12 years, may make application to the overseer of the poor of any town, or to any supervisor of the county, where such child may be, showing by satisfactory affidavit or other proof that the health, morals, or comfort of such child may be endangered, or not properly cared for, and thereupon it shall be the duty of such overseer or supervisor to place such child in one of these institutions. There is nothing in this section about becoming a public charge on any town or county. The only condition is that it shall be shown by satisfactory affidavit, or other proof, that the health, morals, or comfort of such child may be endangered, or not properly cared for, and when that is shown the overseer or supervisor has no discretion, but it becomes his duty to place such child in one of these institutions.

It is to be presumed, when application was made to Supervisor Decker by an uncle of Yates, that it was shown by affidavit, or other proof, that the health, morals, or comfort of Yates was in danger, or not properly cared for. The circumstances and condition of the family warranted such a finding. Supervisor Decker knew this family, and I have no doubt but what he knew their circumstances and condition.

It seems to me that the health, morals, or comfort of a deaf and dumb child would become endangered, or not properly cared for, in nearly every home, unless the parents were able to maintain an instructor for deaf mutes there. I believe this was the opinion of the Legislature in 1910, for then this section was amended by omitting the health, morals, or comfort condition, and changing "it shall be the duty of such overseer or supervisor to place such child in one of the institutions" to "the overseer of the poor or supervisor * * * shall place such child in one of the institutions."

Section 929 provides that:

"The children placed in said institutions, in pursuance to the last two sections, shall be maintained therein at the expense of the county from whence they came, provided that such expense shall not exceed $300 each per year, until they attain the age of 12 years, unless the directors of the institution * * * shall find that such child is not a proper subject to remain."

This section was amended in 1910 by making the number 979 and changing $300 to $325.

Section 930 (now 980) provides that:

"The expenses for the board, tuition and clothing for such deaf mute children, placed as aforesaid in said institutions, not exceeding the amount * * * above allowed, shall be raised and collected as are other expenses of the county from which such children shall be received; and the bills therefor, properly authenticated by the principal or one of the officers of the institution, shall be paid to said institution by the said county."

The state Constitution (article 8, § 11) provides that:

"The Legislature shall provide for a state board of charities, which shall visit and inspect all institutions, whether state, county, municipal, incorporated or not incorporated, which are of a charitable, eleemosynary, * * * character, excepting only such institutions as are hereby made subject to the visitation and inspection of" certain commissions.

Section 13:

"Existing laws relating to institutions referred to in the foregoing sections and to their supervision and inspection, in so far as such laws are not inconsistent with the provisions of the Constitution, shall remain in force until amended or repealed by the Legislature. The visitation and inspection herein provided for shall not be exclusive of other visitation and inspection now authorized by law."

Section 14:

"Nothing in this Constitution contained shall prevent the Legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper; or prevent any county, city, town or village from providing for the care, support, maintenance and secular education, of inmates of orphan asylums, homes for dependent children or correctional institutions, whether under public or private control. Payments by counties, cities, towns and villages to charitable, eleemosynary, correctional and reformatory institutions, wholly or partly under private control, for care, support and maintenance, may be authorized, but shall not be required by the Legislature. No such payments shall be made for any inmate of such institutions who is not received and retained therein pursuant to rules established by the state board of charities. Such rules shall be subject to the control of the Legislature by general laws."

Section 87 of the General Municipal Law (Consol. Laws, c. 24) authorizes boards of supervisors, etc., to appropriate and raise money by taxation and make payments therefrom to charitable, eleemosynary, etc., institutions, wholly or partly under private control, for the care, support, and maintenance of their inmates, such payments to be made only for such inmates as are received and retained therein pursuant to rules established by the state board of charities.

The State Charities Law (Consol. Laws, c. 55) provides that:

"Sec. 2. The term 'state charitable institutions,' when used in this chapter, shall include all institutions of a charitable, eleemosynary * * * character, supported in whole or in part by the state, except institutions for the instruction of the deaf and dumb. * * * "

"Sec. 9. The state board of charities shall visit, inspect and maintain a general supervision of all institutions, societies, or associations which are of a charitable, eleemosynary, * * * character, * * * which are made subject to its supervision by the Constitution or by law; and shall * * *

"8. Establish rules for the reception and retention of inmates of all insti-

tutions which, by section 14 of article 8 of the Constitution, are subject to its supervision."

The county cites and invokes a rule of the state board of charities as amended November 15, 1910 (44th Annual Report, 1910, volume 3, page 994), which provides that:

"No child under the age of sixteen years, unless committed for juvenile delinquency, nor any destitute minor or adult person, whether committed by any court or magistrate or otherwise received, shall be retained in any such institution as a public charge, unless accepted in writing as such by the officer charged with the support and relief of the poor of the county * * * upon which such child * * * is sought to be made a public charge, subject to such regulations as the board may from time to time prescribe."

There was no written acceptance by the superintendent of the poor of Herkimer county (he being the proper officer) of the retention of Yates Lansing in either of these two institutions, and the county therefore claims that it is not liable for his maintenance and instruction therein, and that, having paid therefor, it should be reimbursed out of the father's estate to the time of his death. The executrix contends that this rule of the state board of charities contravenes a general law, to wit, section 928 (now 978) of the Education Law, and is therefore null and void.

There was attached to the bill of the New York Institution for the Deaf and Dumb against the county a certificate as follows:

"State of New York, State Board of Charities.
                    "The Capitol, Albany, October 1, 1909.

"The state board of charities hereby certifies that New York Institution for the Instruction of Deaf and Dumb, located at 163d St. and 11th Ave., New York City, has filed with this board in due form certificates that the said institution has complied with the rules of the board for the reception and retention of inmates, adopted pursuant to the provisions of the Constitution and the State Charities Law, down to the period ending September 1, 1909, and that such evidence is satisfactory to this board.

"By Order of the State Board of Charities.
"No. 24349.                    Robert W. Hill, Secretary."

And a similar certificate was attached to the bill of the Central New York Institution for Deaf Mutes against the county.

[2] The Constitution (article 8, § 14) permits, as claimed by the executrix, the Legislature to make provision for the education and support of the deaf and dumb; but it forbids payment therefor for any inmate of a charitable institution wholly or partly under private control who is not received and retained therein pursuant to rules established by the state board of charities. People ex rel. New York Inst. for Blind v. Fitch, 154 N. Y. 14, 38, 47 N. E. 983, 38 L. R. A. 591.

Reading all of the provisions of the Constitution, relating to this subject, and these statutes together, I am of the opinion that these certificates, made by the state board of charities and attached to these bills, repealed, or waived the enforcement of, said written acceptance rule, and the county became liable for the payment of the bills. Each of these certificates certifies:

"That the said institution has complied with the rules of the board for the reception and retention of inmates."

This means that the institutions have complied with all of the rules which the board intended to be in force during the time named in the certificate.

Claim disallowed.