EDWARDS *v*. LODGE.

4-4898

Opinion delivered January 24, 1938.

*B. E. Isbell* and *Abe Collins,* for appellant.

*Marion C. Early* and *Rose, Hemingway, Cantrell & Loughborough,* for appellees.

MEHAFFY, J. Ivon Lodge, trustee, and the United Bank & Trust Company, filed a complaint in the Sevier chancery court against Patterson Orchards, Inc., William H. Armstrong, as trustee, Fruit Supply Company and Harry S. Kramer, Jr.

It was alleged that the Patterson Orchards, Inc., was the owner of certain described lands and that on November 1, 1930, it executed four promissory notes for the sum of $5,000 each. The notes were made payable to Harry S. Kramer, Jr.; that nothing had been paid on said notes for more than six years. To secure the payment of said notes the said Patterson Orchards, Inc., on the same date, executed and delivered to Ivon Lodge, as trustee for Harry S. Kramer, Jr., and his

assigns or holders of the said notes, a deed of trust by which it conveyed to the said Lodge, as such trustee, certain described lands in Sevier county, Arkansas; that the said notes and deed of trust are now held by the United Bank & Trust Company of St. Louis, which acquired the same for a valuable consideration before maturity. On April 20, 1935, the time for payment of the notes was extended to July 1, 1937. It was further alleged that the Patterson Orchards, Inc., had permitted said lands to be sold to the state of Arkansas on November 19, 1935, and because of this breach of the covenants the appellee elected to declare said notes immediately due and payable. The said Patterson Orchards, Inc., on November 1, 1930, executed a deed of trust to William H. Armstrong as trustee for Harry S. Kramer, Jr., to secure an indebtedness of $50,192.86. Shortly after making this deed of trust, the said Patterson Orchards, Inc., was put into bankruptcy and a sale was had, and from the proceeds of the sale $16,692.86 was applied towards the satisfaction of the deed of trust to Armstrong. On December 1, 1931, the Patterson Orchards, Inc., executed to the Fruit Supply Company a mortgage to secure an indebtedness of $10,000; that this deed of trust and the mortgage to the Fruit Supply Company were subordinate to the lien of the deed of trust sought to be foreclosed by the appellee. It was alleged that the property described in the complaint consisted of 771.23 acres. Appellee prayed for the appointment of a receiver and that the lien of appellee be foreclosed and the proceeds of sale applied first to the cost of the suit and second to the satisfaction of the debt due the said United Bank & Trust Company.

B. E. Isbell was appointed attorney *ad litem* for the nonresident defendants. E. K. Edwards filed an intervention and cross-complaint, alleging that he was the owner and entitled to the possession of certain lands mentioned in appellee's complaint; that he purchased said lands from the state of Arkansas, and the land commissioner made a deed to him. He asked that the deed of trust sued on by appellee be canceled, and that his title be quieted and confirmed.

Abe Collins was appointed attorney *ad litem* to represent the nonresidents in the intervention.

Appellees filed answer to intervention and cross-complaint alleging that the title in Edwards was void. A reply was filed by the intervener, and to the second paragraph of the reply, appellee filed a demurrer. Edwards acknowledged that the appellee had tendered him $211.82, which he had paid to the state of Arkansas.

The chancery court entered a decree holding that the tax title of the appellant was void because the notice of the sale of lands for the taxes of the year 1933 was not given as required by law, but the court held that the appellant was entitled to be paid for tax liens discharged by him in the sum of $231.60 and for betterments to the land made by appellant in the sum of $176.20. The court also ordered that the deed be canceled and set aside as a cloud upon appellee's title to said land. The court also held that the deed from the state of Arkansas for the second described land should be, and is, canceled and that E. K. Edwards should recover the value of permanent improvements made on the lands and for the tax liens against said lands in the total sum of $407.80, and that said sum constituted a lien which was prior and paramount to any right, title, interest or lien of appellee and the defendants.

The following agreed statement of facts was introduced:

"It is agreed that the notice of the tax sale for the taxes of the year 1933, published in Sevier county, was in the following form, and that the certificate of the clerk attached to the copy of said 'Records of Lists Notice of Sales' of said county is in the form attached to said notice and appears in the record immediately thereafter:

"Notice of Delinquent Sale

"The lands and lots and parts of lots returned delinquent in Sevier county for the year 1933, together with the taxes and penalties charged thereon, agreeable to law, are contained and described in a list or record on file in the office of the county clerk; and notice is hereby given to all parties in interest that said several

tracts, lots or parts of lots, or so much thereof as may be necessary to pay the taxes, penalties and costs due thereon, will be sold by the county collector, J. M. Sutton, at the court house in said county, on November 19, 1934, unless the said taxes, penalties and costs, as charged thereon, agreeable by law, be paid before that time, and that the sale will be continued from day to day until the said tracts, lots, and parts of lots be sold.

"Witness my hand and seal this 10th day of November, 1934, Lloyd T. Moore, County Clerk, Sevier County."

Under this notice appears the following:

"State of Arkansas,

"County of Sevier.

"I, Lloyd T. Moore, clerk of the county and state aforesaid, do certify that the above notice was published in the DeQueen Bee, a weekly newspaper, on the 8th day of November, 1934, and in the DeQueen Daily Citizen, a daily newspaper, on the 16th day of November, 1934, at DeQueen, Sevier county, Arkansas. Witness my hand and official seal, this, the 17th day of November, 1934.

"Lloyd T. Moore, County Clerk."

There was then introduced in evidence a deed from the state of Arkansas to E. K. Edwards, said deed dated January 18, 1937; also deed from the state of Arkansas to E. K. Edwards dated February 25, 1937; also the certificate from the county clerk as to the amount of taxes for which the lands were forfeited, and for taxes that would have accrued against said lands in the years 1934 and 1935; also the following stipulations:

"It is stipulated and agreed by and between counsel for intervener and counsel for plaintiffs, that the intervener has expended in the way of improvements, the sum of $176.20.

"It is stipulated by and between counsel for intervener and counsel for plaintiffs, that the DeQueen Bee is a weekly newspaper printed and published at DeQueen, Sevier county, Arkansas, by the DeQueen Publishing Company, and that the Daily Citizen is a daily

newspaper printed and published by the same publishing company and that their circulation is not identical.

"It is further stipulated and agreed that the De-Queen Bee is a weekly newspaper and that it has a *bona fide* circulation in Sevier county, Arkansas, and that the same is true of the Daily Citizen."

Section 6 of act 16 of the Extraordinary Session of the Legislature of 1933 is as follows: "There shall be published once weekly between the first Monday in November and the third Monday in November, in each year, in any county publication qualified by law, a notice to the effect that the delinquent lands, tracts, lots or parts of lots so entered in said delinquent land book will be sold, or so much thereof as is necessary to pay the taxes, penalties and costs due thereon, by the county collector, at the court house in said county (or district) on the third Monday in November next, unless the taxes, penalties, and costs be paid before that time, and that the sale will be continued from day to day until the said tracts, lots and parts of lots be sold. Said notice of sale of delinquent real estate for taxes shall occupy a space of not more than six inches double column in each publication, provided, however, that the rate for the insertion of this legal notice shall not exceed the commercial rate in the publication in which the notice appears, and this rate shall not be affected by any reduction provided otherwise in this act."

Just following this part of § 6 is the form of notice required, and then the section continues:

"The list of delinquent lands recorded as provided in § 5 hereof shall be attached thereto, by the county clerk, a certificate at the foot of said record, stating in what newspaper said notice of delinquent land sale was published and the dates of publication, and such record, so certified, shall be evidence of the facts in said list and certificate contained."

The requirement that "there shall be published once weekly" means once a week. "Weekly," as defined by Webster, means "coming, happening, or done once a week." The law requires the notice to be published in

"any county publication qualified by law," and this means in one publication or one newspaper. 46 C. J. 560.

Act 16 requires the publication of the notice once a week between the first Monday in November and the third Monday in November. There could, therefore, be but two publications in a weekly paper, and the act evidently requires that it be published each time in the same paper. *Tully* v. *Bauer,* 52 Calif. 487; *Townsend* v. *Tallant,* 33 Cal. 45, 91 Am. Dec. 617.

The requirement of the law is that the notice be published in one paper, and not in two papers. If the Legislature had intended that one publication might be in one paper and the second publication in a different paper, it would have said so, because, not only does the act indicate one publication, but it is the custom and practice in the publication of legal notices that are required to be published more than once, to publish all the notices in the same paper.

In construing statutes, it is the duty of the court to ascertain the intention of the Legislature, and this intention is arrived at by what the Legislature said, and in getting at the meaning from what they have said, it is proper to take into consideration not only the entire act in question, but other statutes on the subject.

When this act is considered as a whole and other statutes on the subject considered, we think it perfectly clear that the Legislature intended that the publication of the notice be in one paper and not in two papers.

Appellees have cited and quoted from many decisions construing similar statutes of other states which sustain their contention. We do not discuss them at length because we think a common sense construction of our statute supports the views we have expressed, and while it is the duty of the court to ascertain the intention of the Legislature, it is also the duty of the court to give the statute a common sense construction.

Appellant contends, however, that if there was any irregularity in the publication of the notice, it was cured by act 142 of 1935. Act 142 did cure any irregularities, but it expressly provides for curing irregularities when

the publication of the notice of the sale has been given under a valid and proper description *"as provided by law."* The notice published in the instant case was not such a notice as required by law, and hence act 142 does not cure the defect.

Appellant calls attention to the case of *Giller* v. *Fowlke,* 193 Ark. 644. The court stated in that case that act 296 of the Acts 1929 cured irregularities and informalities and that the clerk's certificate in that case affirmatively showed that there were two weekly publications, and that the clerk posted the lands in the office of the county clerk, as required by law. The court said there was not a technical compliance with § 10085, but that the variance was a mere irregularity. In the instant case there was no compliance with the law at all, as to the publication of the notice, because it was published one time in one paper, and the second publication was in a different paper.

This court has held that act 142 cured any defects that act 296 could cure, but we have never held that act 142 cured a defect such as exists in this case.

One other case referred to on this subject by appellant is *Deaner* v. *Gwaltney,* 194 Ark. 332. That was a drainage district tax case. In that case the appellant relied chiefly, the court stated, upon the failure of the notice to allege the ownership of the land. Act 142 was not involved, and that case is no authority for the contention made by appellant in this case.

While act 142 undertakes to cure irregularities and informalities, yet in order to take the property of the owner, where it has been sold for taxes, it must appear that there was a valid publication; and under the notice published in this case there could be no valid publication. Moreover, appellant does not lose anything, because the decree provides for him to be paid all that he has paid out.

We find no error, and the decree is affirmed.