ANTHONY *v.* THE WESTERN & SOUTHERN LIFE INSURANCE COMPANY.

4-5484                    128 S. W. 2d 1014

Opinion delivered May 29, 1939.

*Shaver, Shaver & Williams,* for appellant.

*H. M. Barney* and *Frank S. Quinn,* for appellee.

SMITH, J. This appeal is from a decree of the chancery court of Little River county holding void the sale of a tract of land in School District No. 4 of that county made in the year 1934 for the taxes due and delinquent thereon for the year 1933.

The sale was held void for the following reasons: "(a) That no proper certificate or return certifying the voting of a school tax in the district in which said lands are situated was filed with the county clerk or county court of Little River county, Arkansas; (b) and the county court clerk of Little River county, Arkansas, did not certify that the notice of delinquent tax sale for the year 1934 was published in a county publication qualified by law to publish such notices; (c) and the notice of delinquent tax sale of the year 1934 was not recorded by the county clerk of Little River county along with the delinquent list, and (d) that the notice of delinquent tax sale was not published for two weeks as required by law, and finds that the said tax forfeiture, sale and certification should be canceled, set aside and held for naught."

We consider these findings in the order stated in the decree. From the "records and proceedings of county board of education of Little River county" the following recital was read into the record now before us:

"At the meeting of the county board of education of Little River county, Arkansas, at Ashdown, on the 25th of May, 1934, there being present R. T. Sessions, County Judge, and C. D. Franks, County Examiner, all members of the board, the following business was transacted, to-wit: Canvassing the return of the school election May 20, 1933. Results were as follows:.

|  |  |  | Tax |  |  |
| Dist. No. | Directors | Term | Gen. | Bldg. | Total |
| 4 | W. W. Gardner | 5 Years | 14 | 4 | 18 |

(and other directors, terms and taxes not pertinent here).

"I certify that the above is a true report of the May school election of the year 1933.

"(Signed) C. D. Franks,
"County Examiner.

"Filed for record June 9, 1933.

"(Signed) W. W. Bishop,
"County & Probate Clerk,
"By Max M. Bishop, D. C.,
"Little River County, Arkansas."

There was also read into the record now before us excerpts from the records of the levying court of Little River county, which, after reciting the organization of the court at "the time fixed by law for the holding of the quorum court for the levying of taxes for the ensuing year," and the names of the several justices of the peace of the county who were present, contained the following recital:

"School Tax Levies: Upon motion by D. W. Bailey and seconded by J. W. Epps, the following levies were made on all real, personal and mixed property within the respective school districts of Little River county, Arkansas, subject to taxation for the year 1933, as hereinafter set out, and as voted by the several school districts in the regular school election held on the third Saturday in May, 1933, and certified by the several school districts within the time and within the manner required by law, and which levies are as follows, to-wit:

| Place | School Dist. No. | Total Mills Voted | Gen Tax | Bldg. Fund |
|-------|------------------|-------------------|---------|------------|
| Richmond | 4 | 18 | 14 Mills | 4 Mills |

"And upon roll call the said motion was carried by a unanimous vote."

It was alleged—and the court below found—that the records, above copied, failed to show proper return of the vote as to the school tax in District No. 4 in the year 1933.

It is argued—and it appears to be true—that when the quorum court met act 26, approved February 9, 1933, and act 247, approved March 29, 1933, were in effect, and that those acts had abolished the county board of education and the office of county superintendent, and that the duties and powers thereof exercised by the county board of education were transferred to the county courts of the respective counties, and the duties of the county superintendent of schools were transferred to a county examiner. It is, therefore, argued that the county board of education did not have the authority to make a canvass and return of the vote as to the school election and make a certificate showing the result thereof, and that this power and duty passed to the county court upon the passage of acts 26 and 247 of 1933.

We will not extend this opinion by a review of this legislation. The certificate does recite that it was prepared at a meeting of the county board of education, but it was signed by the county examiner, and recites that the county judge was present when the returns were tabulated. But the purpose of this canvass and certification was to expedite the work of the quorum court in levying the taxes. The power and duty of the quorum court to levy the school tax would not have been lost had no one made a certificate relating to the returns of the school election which were filed with the county court. It is not questioned that the school directors filed their election returns, nor is it questioned that the taxes levied by the quorum court conformed to the returns of the election held by the school directors. The order and judgment of the quorum court recites that the tax levied was that

"certified by the several school districts within the time and within the manner required by law." The quorum court had the power and was under the duty to levy the school tax if there were election returns filed with the county clerk showing that the tax had been voted and the amount thereof. That there were such returns is a fact not disputed. The quorum court may have examined these returns, and the record of its proceedings indicated that this had been done.

The county clerk was asked: "Q. I wish you would see if you have a certificate of any kind showing the canvassing, the levying and the voting of a tax in school district No. 4 in 1933?" He answered, "Yes, sir, we have the election returns." The county clerk in office at the time of the trial testified that he was not in office when the quorum court levied the taxes, and he did not know what records were before the court when the levy was made, but it was not shown that the election returns were not on file with the clerk of the county court, and a valid levy could have been made upon an inspection of these returns although they had not been tabulated and certified by any one. Certainly, the right to levy the school tax was not to be defeated when the election returns themselves had been properly filed and were present for the examination of the quorum court.

We conclude, therefore, that the sale was not void for the reason just discussed.

The second reason assigned in the decree for holding the tax sale void was that the county clerk did not certify that the notice of the delinquent tax sale for the year 1934 was published in a county publication qualified by law to publish such notices. The certificate reads as follows:

"State of Arkansas,
"County of Little River.

"I, W. W. Bishop, County Clerk of the County and State aforesaid, do certify that a notice of delinquent tax sale was published in the Little River News, a newspaper published at Ashdown, Little River county, Arkansas, for two consecutive issues, November 7th, 1934, and November 14th, 1934.

"In Testimony Whereof, I have hereunto set my hand and affixed the official seal of said county this 15th day of November, 1934.

"W. W. Bishop,

"(Seal)                                                    County Clerk."

The law requires that the notice of sale shall be published ". . . in any county publication qualified by law," and it is not contended that the Little River News is not a newspaper "qualified by law." The contention is that the certificate must certify it so to be, and that in the absence of a certificate to that effect the sale is void.

The answer to this contention appears to be that in the same section of the act (§ 5 of act 16, Acts of Special Session of 1933, p. 61) in which the language quoted appears, there also appears a statement as to what the certificate shall recite, which reads as follows:  "The list of delinquent lands recorded as provided in § 5 hereof shall be attached thereto, by the county clerk, a certificate at the foot of said record, stating in what newspaper said notice of delinquent land sale was published and the dates of publication, and such record, so certified, shall be evidence of the facts in said list and certificate contained." The certificate here involved, copied above, contains the recital which the law requires.

In the case of *Edwards* v. *Lodge,* 195 Ark. 470, 113 S. W. 2d 94, there is copied a certificate made pursuant to the above statute substantially the same as the one here involved, and it was held bad only because it recited that the notice had been published one time (November 8th) in one newspaper and the second time (November 16th) in another, and we held that the two publications should have been in the same paper—in one or the other of the papers.  That was a certificate to the notice of the sale of lands in 1934 for the nonpayment of delinquent taxes for 1933.

There was a certificate appearing in the opinion in the case of *Benham* v. *Davis,* 196 Ark. 740, 119 S. W. 2d 743, which reads as follows:  " 'I, E. H. DuVall, clerk of the county court, do hereby certify that the foregoing notice of sale of delinquent lands, was printed and pub-

lished in the Headlight at Sheridan, Grant county, Arkansas, on the 8th day of November, 1934, and the 15th day of November, 1934. Given under my hand and seal as county clerk on this 17th day of November, 1934.' "

There is no substantial difference between that certificate and the one here involved. One recited that the notice of delinquent lands was published in the Little River News November 7th and November 14th, while the other recites publication in the Headlight at Sheridan on November 8th and November 15th, but neither recited that either paper was "qualified by law," yet the certificate in the *Benham* v. *Davis* Case, *supra,* was held sufficient, and the same certificate must be held good in the instant case, unless we overrule the former cases, and this we decline to do.

The third ground upon which the tax sale was held to be bad was that "The notice of delinquent tax sale for the year 1934 was not recorded by the county clerk of Little River county, Arkansas, along with the delinquent list." The statute requires the delinquent list to be recorded. In the recent case of *Hirsch* v. *Dabbs* and *Schuman* v. *Miveclaz,* 197 Ark. 756, 126 S. W. 2d 116, we said: "We perceive, in this amendatory legislation, no intention to dispense with the requirement that a permanent record be made and kept of lands returned delinquent, nor as to the time of making such record, that is, prior to the sale." Here, the delinquent list was recorded, and that record was made prior to the sale. It does not appear that the published notice was also recorded. But we see no reason for that action, and the statute does not appear to require it. To do so would be to record the same list of lands twice. The list of delinquent lands which the clerk is required to record is that certified by the collector.

This question also appears to have been raised in the case of *Benham* v. *Davis, supra,* and we there said that while the last paragraph of § 6 of the act 16 of the Special Session of 1933 (which is copied above) is somewhat involved, its meaning is that "the clerk shall attach to the list of delinquent lands recorded, as provided in § 5, a

certificate at the foot of the record, stating in what newspaper said notice of delinquent land sale was published and the dates of publication, and that such record so certified shall be received in evidence of the facts therein contained.'' In other words, the delinquent list as certified by the collector must be recorded prior to the date of sale, and must be published for the time and in the manner required by law, but, when published, it is not required that the published notice shall also be recorded. What is required is that, after publication has been made, there shall be appended, at the foot of the record of lands returned delinquent by the collector, a certificate stating in what newspaper said notice of delinquent land sale was published and the dates of the publication.

The record before us shows that the list of lands returned delinquent by the collector was duly and properly recorded, and when this delinquent list had been published the clerk made the certificate above copied, stating in what newspaper said notice of delinquent land sale had been published, with the dates of publication. This was a substantial compliance with the law.

The fourth reason given by the court below for holding the tax sale void was ''That the notice of delinquent tax sale was not published for two weeks as required by law.''

Section 5 of act 16 of the Special Session of 1933 provides that ''There shall be published once weekly between the first Monday in November and the third Monday in November, in each year, in any county publication qualified by law, a notice to the effect that the delinquent lands, tracts, lots or parts of lots so entered in said delinquent land book will be sold, or so much thereof as is necessary to pay the taxes, penalties and costs due thereon, by the county collector, at the courthouse in said county (or district), on the third Monday in November next, . . .''

It is argued that this act requires that the last publication be made two weeks before the day of sale, and the case of *McWilliams* v. *Clampitt*, 195 Ark. 908, 115 S. W. 2d 280, is cited to support that contention. It will be observed that the publications of the notice must be be-

tween the first Monday and the third Monday in November. We construed this portion of act 16 in the case of *Edwards* v. *Lodge, supra,* and held, to quote a headnote in that case, that "Section 6 of act 16 of the Ex. Ses. of 1933, providing that 'There shall be published once weekly between the first Monday in November and the third Monday in November, in each year, in any county publication qualified by law, notice, etc.,' requires the publication of the notice of sale of delinquent lands once a week for two publications, between the dates mentioned, and that it should be published each time in the same paper."

It would be a physical impossibility to have two publications of the notice a week apart, the last publication being two weeks before the third Monday if both publications are to be made between the first and third Mondays of the month. To so construe the act would be to hold that a legal notice of the sale could not be given. We, therefore, adhere to the construction of the act given it in the case of *Edwards* v. *Lodge, supra.* The publications here made complied with the act as there construed, the first publication having been made on November 7th and the second on November 14th, the publications being a week apart and both between the first and third Mondays. The first Monday in November, 1934, was the 5th day of the month and the third Monday was the 19th day of that month.

The case of *McWilliams* v. *Clampitt, supra,* cited and relied upon by appellee, does not apply or control here. It is true we held in that case that the last publication must be made two weeks before the date of sale, but that sale was not made pursuant to the provisions of act 16 of the Special Session of 1933, but was made pursuant to the provisions of § 10084, Crawford & Moses' Digest, as amended by act 250 of the acts of the Regular Session of 1933, the provisions of the amendatory act 250 being that "There shall be published once weekly for two weeks between the second Monday in May and the second Monday in June, in each year, . . .," the notice of delinquency. The change made by act 16, *supra,* is apparent, it having omitted the words "for two weeks" appear-

ing in the prior legislation, so that it is no longer required that the last publication be made two weeks before the sale, as was required under the law applicable to the *McWilliams* v. *Clampitt* case.

We conclude, therefore, that the notice was published in conformity with act 16 of the acts of the special session of 1933, and was sufficient.

Upon the whole case we are of opinion that the sale was not void for any of the reasons assigned by the court below, and the decree will, therefore, be reversed, and the cause will be remanded with directions to dismiss the complaint attacking the tax sale as being without equity.