BERRY *v.* DAVIDSON.

4-5668 133 S. W. 2d 442

Opinion delivered November 20, 1939.

*Culbert L. Pearce,* for appellant.

*C. E. Yingling, Jr.,* and *C. E. Yingling,* for appellee.

Baker, J. This suit was filed by the appellant to foreclose a mortgage dated March 1, 1923, due ten years after date. The note secured by this mortgage or deed of trust was payable to the American Investment Company, Inc. On April 10, 1923, the note was assigned and delivered to Catherine Casserly, trustee. The said note and mortgage were delivered to the appellant, Annie Berry, as a part of her share in her father's estate which estate had been left by will to Catherine Casserly, his widow, and to the appellant, his only child and heir at law.

In this suit, the defendant, Walter B. Paschal, Jr., who was the vice-president and secretary of the American Investment Company, Inc., and G. A. Hunnicutt intervened. Paschal claimed title to the east half of the northeast quarter, section 12, township 6 north, range 6 west. The allegations were to the effect that on the 25th of September, 1936, the State of Arkansas by its deed conveyed lands that had forfeited to the state for taxes to one Floyd W. Hamilton. Hamilton on the 19th of December, 1936, conveyed the above described tract of land to Walter B. Paschal, Jr. The allegations to support Hunnicutt's intervention were substantially to the effect that Catherine Casserly died intestate in Jo Daviess county, Illinois, on or about the second day of March, 1933, and, at the time of her death, she was the owner of the note and mortgage sued on by appellant. Thereafter, Maud E. Smith, who was appointed administratrix of the estate of Catherine Casserly, for value received sold and assigned the mortgage mentioned in the plaintiff's complaint to the Paschal Investment

Company. This Paschal Investment Company was a subsidiary or may have been only an allied corporation working in connection with the American Investment Company, Inc. Thereafter, on October 29, 1937, the Paschal Investment Company made a written assignment of the note and mortgage to the intervener, G. A. Hunnicutt, although neither had actual or constructive possession thereof, who by his intervention asserted his ownership of the same note and mortgage that Mrs. Annie Berry had sued upon in her foreclosure proceedings. In Paschal's intervention, in addition to his allegations of ownership acquired through the tax title, he asserted that the state of Arkansas, after the forfeiture and sale of these lands to the state, had confirmed said title on June 8, 1936.

The trial court held that Annie Berry was the owner of the note and mortgage and was entitled to a first lien on the lands described therein except that the lien had been defeated on the 80 acres of land claimed by Paschal under the tax sale and confirmation thereof. Annie Berry appealed from that part of the court's decree which was a denial of a lien against Paschal's land and Hunnicutt appealed from that part of the decree that declared ownership of note and first mortgage to be in Annie Berry instead of in him as the intervener. These are the only questions submitted to us for our consideration.

The plaintiff attacks the tax sale and asserts that the 80-acre tract of land was never sold by the collector of White county to the State of Arkansas for taxes due thereon for the year of 1932, and adds to this assertion that "it may be true that the collector attempted to sell the property, but the attempted sale was invalid for these reasons." There is then set out about ten different assignments or reasons for the invalidity of the tax sale. One is that there was no proper levy of taxes in 1932 payable in 1933, that the taxes were never made and extended on the tax books of White county as provided by law. Second, that no proper appropriation of taxes for the years 1932 and 1933 was ever made and recorded as provided by law.

It is most probably unnecessary to· set out all 'these different objections urged as affecting the validity of the tax sale. We think it might well be conceded by anyone who would read the record in this case that practically every objection argued by the appellant is in itself sufficient to establish the invalidity of the tax sale except for the effect of the confirmation pleaded by the intervener, Paschal. It may also be said further that the appellant's contention in regard to these matters is well fortified by the numerous well considered authorities cited. Indeed, we find no fault with the case of *Mixon* v. *Bell,* 190 Ark. 903, 82 ·S. W. 2d 33, as modified in the later case of *Lambert* v. *Reeves,* 194 Ark. 1109, 110 S. W. 2d 503, 112 ·S. W. 2d 33. These cases related to the proper extension of the taxes upon the tax book. We are also acquainted with and gave continued approval to the case of *Buchanan* v. *Pemberton,* 143 Ark. 92, 220 S. W. 660; *Simpson* v. *Reinman,* 146 Ark. 417, 227 S. W. 15; *Quartermous* v. *Walls,* 70 Ark. 326, 67 S. W. 1014, and the very recent case of *Ramsey* v. *Long-Bell Lumber Co.,* 195 Ark. 528, 112 S. W. 2d 951. All of these cases relate to notice of delinquency to uphold and support a valid forfeiture of sale to the state for the nonpayment of taxes. We see the application made by the citation of authority as the same has arisen under the facts in this case wherein proof shows there was no notice posted or publication of the delinquent lands for sale otherwise given. The mandate of the statute, § 10084 of Crawford & Moses' Digest, as amended by act 250 of.1933, was in full force and effect and was wholly ignored, nor is there any doubt that the requirement of the law as to publication of notice was mandatory. See *Emerson* v. *Voight,* 196 Ark. 129, 116 S. W. 2d 348; *Union Bank & Trust Co.* v. *Horne,* 195· Ark. 481, 113 S. W. 2d 1091; *Hirsch and Schuman* v. *Dobbs and Mivelaz,* 197 Ark. 756, 126 S. W. 2d 116. Such an irregularity, that is, the failure to give the required statutory notice, would have made act 142 of 1935 ineffectual, had it been deemed otherwise applicable. Other recent cases supporting appellant's contention are *Edwards* v. *Lodge,* 195 Ark. 470, 113 ·S. W. 2d 94; *Union Bank & Trust Co.* v. *Horne,* 195 Ark. 481, 113

S. W. 2d 1091; *McWilliams* v. *Clampitt,* 195 Ark. 908, 115 S. W. 2d 280, as well as the case that has been perhaps cited more frequently than any other since it was announced, that is *Carle* v. *Gehl,* 193 Ark. 1061, 104 S. W. 2d 445.

But notwithstanding this voluminous array of authorities, we are impelled to hold that they are not applicable to the case at bar. The trial judge held that the confirmation of this title cured all the defects. His announcement was undoubtedly founded on the recent case of *Fuller* v. *Wilkinson, et al.,* 198 Ark. 102, 128 S. W. 2d 251. The cited case gave consideration to act 119 of the Acts of 1935 for the first time. Perhaps no good could be accomplished by reconsidering or reiterating what we said in the last cited case. According to the analysis made therein we now think it apparent that the legislature was endeavoring to find and put into effect a remedy or means to correct the evils growing out of nonpayment of taxes, to prevent tax evasion. For many years it was a recognized proposition that tax forfeitures and sales of land on account thereof were well nigh universally held ineffectual to convey title, and there is perhaps at this time, no doubt, that there was a general recognition of the futility of taxing laws; that it was thought by many that people need not pay taxes if they were willing to meet the worry and expenses of litigation in regard thereto.

It is evident that Act 296 of the Acts of 1929, the first of the more recent corrective efforts, was a faltering struggle to stem this evil. It is probable that large delinquencies had their origin in the inability of the people to meet taxes during depression years. When the worst of the financial stress had passed, there appeared a legislative trend toward processes to restore property to the tax books for the regularly expected revenues to be derived therefrom.

Act 142, above mentioned, while it was still in force, was another evidence of the legislature's effort and struggle to correct or cure these well grounded and long established practices illustrating the futility of the law

requiring payment of taxes. Out of all this has come Act 119 of the Acts of 1935 construed and upheld in the last cited case. According to the terms of that statute, when it shall have been invoked in regard to such tax sales, we must, and do, hold that the decree of confirmation of a sale to the state "operates as a complete bar against any and all persons, firms, corporations, quasi-corporations, associations who may claim said property" sold for taxes subject only to the exceptions set forth and stated in the act, none of which is applicable to aid the appellant. If there are any taxes levied or assessed against the land, however defectively that may have been done and when the taxes shall not have been paid, the state has the power to sell. We are saying now that the power to sell is given by the law. Notice of sale is not an absolute prerequisite to the exercise of that power, but it is a condition. That power to sell may be exercised so defectively or erroneously that the sale may be invalid, but, notwithstanding such invalidity, the power of sale so arising or grounded on the statute still exists, as one process of enforcing tax payments. Of course, the sale may not be made for a tax that does not exist as in the cited case, still taxation is the rule and exemption from taxation is the exception. There arises the presumption that land and other property are subject to the usual and ordinary state and county taxes, and in any event wherein such tax may not have been levied, that fact must affirmatively appear, otherwise there is a presumption that the state has the right to exercise its power to sell the property on account of existing tax delinquency. In this case, there need not be considered a lack or want of power to sell, and our recent construction of Act 119 of 1935 authorizes a confirmation of title which "operates as a complete bar against any and all persons, firms, etc." Since we have seen the application of the aforesaid act, there is no necessity to set forth and discuss the more recent legislative acts which do not change or modify the effect of the foregoing statute as applied to the facts in this case.

The appellant cites numerous authorities supporting the contention that the appellee, Walter B. Paschal, Jr., was a holder of this property under the foreclosure of

the second mortgage thereon; that he was in possession and receiving the rents; that it was his legal duty and obligation to pay the taxes thereon; and that he could not legally permit a sale for taxes and become the purchaser by reason of his own default. However sound and plausible that contention may be, we think it has been effectively answered by the showing in this record that upon the foreclosure and sale of the property under the second mortgage, The American Investment Company, Inc., became the purchaser and, whatever its duty or obligation was to pay the taxes upon the property which it did not do, this company sold to Paschal whatever interest it had under foreclosure of the second mortgage. This was after Paschal had bought from Hamilton the confirmed title. While it is true that Paschal was the vice-president and secretary of this investment company, it is equally true that his identity and that of the corporation are not the same, and we know of no authority, and certainly none has been cited, that would have required Paschal as such an officer to act individually and make payment of these taxes and prevent forfeiture; nor have we been cited to any authority that would prevent Paschal as an individual from purchasing the tax title from Hamilton. Before saying that the trial court was correct in holding that Paschal had acquired a title by reason of this tax delinquency and sale and confirmation superior to the first mortgage held by the appellant, we think, from the foregoing statement, that it must also be determined that, since Paschal, in order to protect his own property, was required to pay taxes not only thereon, but on the other tract of land or 80 acres upon which the appellant was decreed to have the first lien subject to these taxes, this payment made by him under the circumstances brought about or worked a subrogation in his favor giving a lien upon said property as security for the amount paid. Certainly there is no record evidence for our consideration, that he was under any obligation to pay taxes as a mortgagee in possession, and his lien was on that account properly declared.

The only remaining issue arising out of Hunnicutt's claim is to the effect that he was the owner of this note and first mortgage by reason of a sale made by the administratrix of Mrs. Casserly's estate. We think the rights of the respective parties must be determined by the facts and not as a question of law. Mrs. Berry explains that much of her father's estate was invested in mortgages, many of which were made to her step-mother. The proof seems to be conclusive that the attorney who handled this estate had charge of these investments. The $2,000 that Mrs. Casserly received as legatee under her husband's will was either paid in money or by the delivery of property other than the note and mortgage involved here. The note and mortgage here considered were made payable to Mrs. Casserly as a "trustee" which may have been intended to indicate the fact that she was not the actual owner. While such designation as "trustee" under our statute would not have that effect in law, it might be of some evidentiary force when taken in connection with other facts as they are developed. The proof is undisputed that this family counselor who had charge of these properties delivered this note and mortgage to Mrs. Berry. It may be pertinent to remark that the administratrix seems never to have made demand upon Mrs. Berry or any other custodian, nor did the administratrix pursue any remedy that may have been available to her to get possession of the disputed note and mortgage. The sale was without possession for an almost nominal consideration. Such a consideration may be determinative of Hunnicutt's good or bad faith. Affirmed on appeal, and Hunnicutt's cross-appeal.